Clark v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-014-CR

     RUFUS RAY CLARK,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 17,665
                                                                                                    

O P I N I O N
                                                                                                    

      Rufus Clark appeals his conviction for burglary. Clark was indicted for the offense of
burglary of a habitation. On October 15, 1990, a jury was selected and the trial was set to begin
on October 18. Neither the complainant nor Clark was present on October 18, and the court
granted the State's motion for continuance based on the absence of the complainant. The case was
continued to October 19 with the same jury. On that day the complainant was present, but Clark
again failed to appear. The trial court denied defense counsel's motions for continuance and
mistrial, and the case proceeded to trial in Clark's absence. A jury found him guilty and assessed
punishment at sixty years in prison. Clark's Motion for New Trial, filed on November 28, was
overruled by operation of law. On appeal, Clark complains that he was erroneously tried and
convicted in absentia.
      In three points, Clark contends that the court erred in failing to grant his motion for
continuance, in failing to grant his motion for mistrial, and in failing to grant his motion for new
trial. He argues that his absence was involuntary because "[h]is fear of proceeding to trial without
his character witnesses rendered him powerless to come to court." 
      At 9:00 a.m. on Friday, October 19, 1990, the court called the case for trial before a jury and
requested announcements of ready from counsel for the state and the defendant. Clark's attorney
requested a continuance because of his client's absence. Defense counsel informed the court that
he had not heard from Clark since Wednesday evening, October 12. After confirming on the
record that Clark had been present on Monday when the jury was selected and sworn in, and that
Clark had been instructed to return on Thursday morning for trial, the court found that Clark had
voluntarily absented himself from the trial and denied his attorney's motion for continuance.
      Article 33.03 of the Texas Code of Criminal Procedure provides the following statutory
guidance regarding the presence of the defendant in a felony prosecution:
In all prosecutions for felonies, the defendant must be personally present at the trial
. . . provided, however, that in all cases, when the defendant voluntarily absents himself
after pleading to the indictment . . . or after the jury has been selected when trial is
before a jury, the trial may proceed to its conclusion . . . . 

Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1989).
      The trial court could have reasonably inferred from the information before it that Clark
voluntarily absented himself from the trial. See Moore v. State, 670 S.W.2d 259, 261 (Tex. Crim.
App. 1984). Therefore, as in Moore, we hold that the court did not abuse it discretion in denying
Clark's motions for continuance and mistrial and proceeding with the trial as authorized by article
33.03. See id. Likewise, we find no abuse of discretion in allowing Clark's motion for new trial
to be overruled by operation of law. See Appleman v. State, 531 S.W.2d 806, 810 (Tex. Crim.
App. 1976) (on rehearing). Points of error one, two, and three are overruled.
      We affirm the judgment.
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed May 13, 1992
Do not publish



                                
O P I N I O N
                                                                                                                
   
      This opinion addresses two interlocutory appeals arising out of one trial court case. Cause
Number 10-99-275-CV is an appeal from an order certifying a class action. During the
hearing on Plaintiffs’ motion to certify a class, the trial court refused to consider the majority
of the material offered by Defendants, excluding the documents on the basis that they were not
admissible or were not disclosed to Plaintiffs during discovery. Among the items excluded
were documents from a Louisiana national class action involving the same product and
transactions as those the subject of this suit, including documents which reflected the “opt-outs” from that class, the settlement agreement, and the final judgment resolving the class
members’ claims. We conclude that (a) the court erred in excluding the proffered material
because the rules governing evidence and discovery practice do not strictly apply in a class
certification hearing and (b) the error was harmful in that, although the excluded materials may
demonstrate that the class certification here is improper, the court’s ruling prevented
Defendants from presenting that argument to us. Thus, we will reverse the court’s certification
order and remand for further proceedings.
      Cause Number 10-99-284-CV is an appeal from an injunction prohibiting Defendants from
contacting the absent class members and from taking any action to enforce the Louisiana class
settlement against those members during the pendency of this action. We conclude that the
injunction must be set aside because the order imposing it fails to specify the reasons that it
was issued as required by Rule 683 of the Texas Rules of Civil Procedure.
BACKGROUND
      This is the second time that a dispute between these Plaintiffs—a group of Texas cotton
farmers—and these Defendants—manufacturers and distributors of high-tech cotton
seed—arising out of the underlying litigation has reached us. In the first, we considered a
petition for a writ of mandamus brought by Monsanto Company, Delta Land and Pine Co., and
D&M Partnership (Defendants


) to avoid the production of certain documents for which they
claimed a privilege. In re Monsanto, 998 S.W.2d 917 (Tex. App.—Waco 1999, orig.
proceeding). Like the mandamus, these proceedings are brought to us before a trial on the
merits has occurred. These appeals, however, require a fuller understanding of the
controversy that produced the underlying litigation. 
The root of the matter
      This lawsuit has its seeds in the 1996 cotton planting season in Texas. In the fall of 1995,
Monsanto Company announced that it had developed a cotton plant which was genetically
engineered to produce an insect-fighting protein. The gene technology which produced this
attribute was patented by Monsanto and marketed under the name Bollgard. According to
Monsanto’s promotional material, a cotton plant with the Bollgard gene would have the ability
to control common, and very destructive, pests such as the tobacco budworm, the cotton
bollworm, and the pink bollworm.
       A farmer was charged two separate charges for the use of the Bollgard cotton seed—the
purchase price for the seed and a per-acre-planted “technology licensing fee.” Most of the
farmers who purchased the seed placed their technology licensing fee on an open account
maintained by their local retailer. The retailer was responsible for passing the licensing fee on
to Monsanto once the farmer had paid the amount then due.
Litigation sprouts
      Plaintiffs, Texas cotton farmers who purchased and planted the Bollgard seed in 1996, did
not believe that the Bollgard cotton performed as Monsanto represented it would. In August
1996, they filed this suit, alleging that Defendants conspired to commit and were guilty of
committing acts that amounted to fraud, violations of the Texas Deceptive Trade Practices Act,
negligence, and negligent misrepresentations. 
      Plaintiffs were not the only ones dissatisfied with the performance of the Bollgard seed. In
October 1996, other plaintiffs filed a suit in Louisiana state court, styled Ren-Dan Farms, et
al. v. Monsanto Company, et al.,


 seeking recovery for similar claims relating to the use of
Bollgard seed during the 1996 cotton growing season. The Texas suit and the Louisiana suit
each included a request for certification as a class action.
      Apparently, many of the farmers who used the Bollgard seed in 1996 failed to pay the fees
which were due under the technology licensing agreements. In response, Monsanto sent form
letters to 108 Texas farmers in November and December 1996 advising them that their
accounts were overdue and requesting payment. Both form letters also contained a sentence
which stated that “[a]ll accounts not paid as of September 1, 1996 are assessed a finance
charge of 14% per annum.” Based on these form letters and individual follow up letters,
Plaintiffs added a usury count to their petition in August 1997, asserting that in the absence of
an agreement to pay interest, the claim that Monsanto was entitled to collect a 14% finance
charge constituted usury under Texas law. Plaintiffs again asked for class-action status for
their usury claims, although they did not immediately pursue a class certification order. In
November 1997, Monsanto sent out a “corrective action letter” to 100 of the farmers from
whom they had not received complaints regarding the finance charge, withdrawing that charge. 
      Ren-Dan Farms, on the other hand, moved to settlement. On May 26, 1998, the parties to
that suit presented the Louisiana court with a Joint Stipulation, which outlined the terms and
conditions for certification of a proposed settlement class. On the same day, the court
tentatively certified the suit as a national class action and approved the form of the notice to be
given to the absent class members. Six and one-half weeks later, on July 10, 1998, the parties
presented the Louisiana court with an executed settlement agreement and the court rendered a
final judgment, expressly holding that the class settlement “is to be all-inclusive, and to
extinguish all claims that the members of the class may have arising out of the purchase and
use of Bollgard® cotton in the 1996 planting season, consistent with the terms expressed in the
Settlement Agreement.”
A second class blossoms
       In July 1999, Plaintiffs requested that the court sever their usury claims and certify that
severed suit as a class action. After granting the severance, the court set a hearing on
Plaintiffs’ motion to certify on September 2, 1999. On the day of the hearing, both sides filed
briefs in support of their positions. Defendants attached twenty-four exhibits to their brief in
opposition to Plaintiffs’ request for certification of the class, including a certified copy of the
Ren-Dan Farms’ settlement agreement and final judgment and copies of the Ren-Dan Farms’
class notice and opt-out lists. 
      At the hearing, three Plaintiffs and one of their attorneys testified. In summary, Plaintiffs
generally testified that they had purchased Bollgard cotton seed from Monsanto, that they did
not agree to pay interest to Monsanto for overdue technology licensing fees, and that Monsanto
had assessed a 14% finance charge on their outstanding debt. Plaintiffs also tendered twenty-five documents in support of their request for class status, including letters sent by Monsanto
to the growers, internal Monsanto e-mail correspondence, a summary of other documents
produced by Plaintiffs’ counsel, and a letter from Defendants’ counsel providing information to
Plaintiffs’ counsel in anticipation of settlement negotiations. Through these documents,
Plaintiffs sought to establish that there were 108 Texas farmers in the usury class.
      Defendants attempted to counter Plaintiffs’ showing by cross-examination and documents. 
Through cross-examination, Defendants established that all three Plaintiffs had opted-out of the
Ren-Dan Farms class individually but had not taken any steps to explicitly opt-out the class of
Texas farmers they aspired to represent. Defendants relied primarily on the documents which
were attached to their brief in opposition to class certification. However, Plaintiffs objected
when Defendants tried to introduce those documents into evidence. Specifically, Plaintiffs
argued that an affidavit from the Ren-Dan Farms tabulation agent (and the attached copy of the
class notice and list of the farmers who opted out of the Ren-Dan Farms class) and certified
copies of the Ren-Dan Farms settlement agreement and final judgment should not be
considered by the court because Defendants had not provided Plaintiffs with copies of the
documents during discovery. The court agreed and refused to consider these items. Plaintiffs
further asked that the court not consider the copies of the documents attached to Defendants’
pre-hearing brief. In response, the court indicated that it “did not consider it because it was
excluded even though it was attached to the Memorandum.” At the conclusion of the hearing,
Defendants made an offer of proof of the excluded items.
      As part of their argument against certification, Defendants asserted that the named
Plaintiffs would be antagonistic to the interests of the absent class members because:
Here, what you will find is that because of the Ren-Dan settlement and the indemnities
that are present in that settlement, that the other people in the class could become
liable on their indemnities as a result of the actions taken by the named Plaintiffs in
this suit. The interests of the parties are exactly antagonistic and exactly in conflict. 
What these people are trying to do in this case is basically set aside the settlement in
the Ren-Dan case. The people in the Ren-Dan class who settled and who received
consideration are now going to have someone out there who is trying to set aside the
agreement by which they benefitted. That will trigger their indemnification
obligations, and that is adverse. 

Plaintiffs interpreted this argument as a threat by Defendants to initiate proceedings against the
absent class members to enforce any indemnification rights Defendants had under the Ren-Dan
Farms settlement. Plaintiffs asked the court to enjoin Defendants from contacting members of
the class and from “going back to Louisiana and trying to somehow interfere with the
proceedings in this case.” 
      At the end of the hearing, the court announced that it would grant Plaintiffs’ request for
class certification and signed an order describing the class as “all persons living in Texas that
were charged 14% interest by Monsanto Company, Delta and Pine Land Company, and/or
D&M Partnership relating to a technology fee involved in the purchase of Bt cotton seed for
the 1996 growing season[.]” This order is the subject of the appeal in Cause Number 10-99-275-CV.
      At the end of the certification hearing, the court also granted Plaintiffs’ oral request for an
order prohibiting Defendants from contacting the absent class members and from taking any
action in another forum. The court later held a hearing on Plaintiffs’ request to convert the
oral order into a temporary injunction. At the conclusion of the hearing, the court signed a
temporary injunction ordering Defendants to refrain from (1) communicating with any of the
class except through the class attorneys and (2) taking any action that would adversely affect
the rights of the class, including any action to enforce the Louisiana settlement against the
members of the class, other than actions taken in this proceeding. This order is the subject of
the appeal in Cause Number 10-99-284-CV.
CLASS CERTIFICATION APPEAL
      In this Court, Defendants attack the certification order on several fronts. On one hand,
they contend that the court erred in certifying the class because none of the absent class
members have a claim as a result of the Ren-Dan Farms settlement or as a result of the
“corrective action letters” sent out by Monsanto in November 1997. Alternatively, Defendants
claim that the Ren-Dan Farms settlement prevented the court from finding that any of the
elements of Rule 42 were satisfied. In a separate attack on one of the Rule 42 elements, the
adequacy of Plaintiffs as class representatives, Defendants contend that Plaintiffs’ twenty-four
month delay between asserting the usury claim and seeking certification of the class
demonstrates that they are not adequate representatives. Finally, Defendants argue that the
court reversibly erred when it refused to consider all of the exhibits that they tendered during
the certification hearing.
AnalysisJudicial efficiency requires us to first rule upon the complaints brought by Defendants
which would entitle them to the greatest relief. Bradleys’ Elec., Inc. v. Cigna Lloyds Ins. Co.,
995 S.W.2d 675, 677 (Tex. 1999); see also Tex. R. App. P. 47.1 (“The court of appeals must
hand down a written opinion that is as brief as practicable but that addresses every issue raised
and necessary to final disposition of the appeal.”). Thus, if Defendants have shown that the
trial court erred in certifying the class for a reason that would preclude certification on
remand, they are entitled to an opinion recognizing that bar. If on the other hand, Defendants
are unable to show a basis for barring re-certification, but are able to establish multiple reasons
for a reversal of the order, we can chose from among those reasons without impinging upon
judicial efficiency or Defendants’ rights to full appellate review.
      Thus, we must first address the issues raised by Defendants which would have the effect of
barring reconsideration of the class certification issue by the court on a remand from this court. 
We start, then, with Defendants’ attacks on the merits of the class certification order. After
considering, and rejecting, each of Defendants’ complaints directed at the merits of the
certification order (without considering the excluded materials), we will turn to the issue of the
court’s refusal to consider the material presented by Defendants at the certification hearing.
The merits of the certification order
      Before considering the merits of Defendants’ attacks on the certification order, we must
first determine how and what we should review. As we will show, the scope of review is
determinative of Defendants’ attack on the merits of the certification order.
      Standard and scope of review
      A trial court enjoys broad discretion in making the decision to certify a class. Weatherly
v. Deloitte & Touche, 905 S.W.2d 642, 647 (Tex. App.—Houston [14th Dist.] 1995, writ
dism’d w.o.j.). We review the court’s certification decision for an abuse of discretion. 
General Motors Corp. v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996); Sun Coast Resources,
Inc. v. Cooper, 967 S.W.2d 525, 529 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d
w.o.j.). A trial court abuses its discretion when ruling on class certification if it (1) does not
properly apply the law to the undisputed facts, (2) acts arbitrarily or unreasonably, or (3) rules
upon factual assertions not supported by the record. Spera v. Fleming, Hovenkamp &
Grayson, 4 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Sun Coast
Resources, 967 S.W.2d at 529.
      When reviewing the merits of the court’s decision, we are limited to considering the
material that was before the court at the time that it ruled. Methodist Hospitals of Dallas v.
Tall, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.). As a general rule,
documents not admitted into evidence are not considered by an appellate court. See Reyes v.
Reyes, 946 S.W.2d 627, 630 (Tex. App.—Waco 1997, no writ); Vanscot Concrete Co. v.
Bailey, 862 S.W.2d 781, 783 (Tex. App.—Fort Worth 1993), aff’d, 894 S.W.2d 757 (Tex.
1995).
      Class certification standards under Rule 42
      There is no right to bring a lawsuit as a class action. Sun Coast Resources, 967 S.W.2d at
529. Rather, to achieve class status, the proponent of the claim must satisfy all four criteria of
Rule 42(a) and at least one of the conditions in Rule 42(b). Tex. R. Civ. P. 42(a), (b);
Southwestern Refining Co. v. Bernal, 2000 WL 566745, *7 (Tex. 2000); Sun Coast Resources,
967 S.W.2d at 529.
      Rule 42(a) requires the putative class representative to show:
 (1)numerosity—the class is so numerous that joinder of all members is
impracticable. Rainbow Group, Ltd. v. Johnson, 990 S.W.2d 351, 356 (Tex.
App.—Austin 1999, pet. dism’d w.o.j.). Numerosity is not based on numbers alone,
but includes such factors as judicial economy, the nature of the action, geographical
location of class members, and the likelihood that class members would be unable to
prosecute individual lawsuits. Id. at 35; 


 
(2)commonality—there are questions of law or fact common to the class. Id. 
Commonality requires that some, not necessarily all or even a substantial portion, of
the legal or factual questions be common to the class. Id. at 358. The issues must be
such that when they are answered for one member of the class, they are resolved for
all members of the class. Sun Coast Resources, 967 S.W.2d at 532. Even one
common question could be sufficient to support a class action. Microsoft Corp. v.
Manning, 914 S.W.2d 602, 611 (Tex. App.—Texarkana 1995, writ dism’d);
 
(3)typicality—the claims or defenses of class representatives are typical of the claims
or defenses of the class. Rainbow Group, 990 S.W.2d at 356. To be typical of the
class, the named plaintiffs must possess the same interest and suffer the same injury as
the rest of the class. Weatherly, 905 S.W.2d at 653. Their claims must arise from
the same event or course of conduct giving rise to the claims of the other class
members and must be based on the same legal theory. Id. 
 
(4)adequacy of representation—the class representatives will fairly and adequately
protect the interests of the class. Rainbow Group, 990 S.W.2d at 356. There are two
elements which are considered for determining if the named plaintiffs are adequate
representatives of a class: (1) it must appear that the named plaintiffs will vigorously
prosecute the class claims through their attorneys, and (2) there must be an absence of
antagonism or conflict between the named plaintiffs’ interests and the interests of the
absent class members. Sun Coast Resources, 967 S.W.2d at 538.

      Although there are five possible ways of satisfying Rule 42(b), Plaintiffs relied in the trial
court, and again before us, on only two of those provisions. First, Plaintiffs contended that the
class is proper because Rule 42(b)(1)(A) has been satisfied. Tex. R. Civ. P. 42(b)(1)(A). 
Under that part of the Rule, a class action may be maintained if, in addition to the elements of
Rule 42(a), the proponent shows that prosecution of separate actions by individual class
members would create a risk of inconsistent adjudications. Id.; Reserve Life Ins. Co. v.
Kirkland, 917 S.W.2d 836, 845 (Tex. App.—Houston [14th Dist.] 1996, no writ), overruled
on other grounds, Southwestern Refining Co. v. Bernal, 2000 WL 566745, *8 (Tex. 2000); see
also FirstCollect, Inc. v. Armstrong, 976 S.W.2d 294, 302-03 (Tex. App.—Corpus Christi
1998, pet. dism’d w.o.j.). 
      Plaintiffs also claimed that the class is appropriate under Rule 42(b)(4). Tex. R. Civ. P.
42(b)(4). This portion of the Rule is satisfied if the class representative shows that the factual
or legal issues common to the class predominate over issues affecting only individual members,
a criterion referred to as “predominance,” and that the class action is a superior method to
fairly and efficiently adjudicate the controversy compared to other available methods, a
criterion referred to as “superiority.” Id.; Bernal, 2000 WL 566745, *7; Rainbow Group, 990
S.W.2d at 356. The court did not indicate on which of these provisions it was relying in its
certification order; thus, to affirm we must find only that the court’s decision was correct
under one of them because certification may be appropriate under more than one section of
Rule 42(b). Cablevision of Dallas, Inc. v. Owens, 8 S.W.3d 837, 847 (Tex. App.—Beaumont
2000, pet. filed). 
      Global effects of the Ren-Dan Farms class settlement 
      Defendants make two global attacks on the certification order on the basis of the Ren-Dan
Farms settlement. First, Defendants contend that the claims asserted on behalf of the absent
class members were resolved by the Ren-Dan Farms settlement and are, therefore, barred from
being asserted in this action by the doctrines of res judicata and release. Secondly, Defendants
assert that Plaintiffs have no standing to prosecute this action as class representatives because 
none of the other class members’ claims against Defendants survived the Ren-Dan Farms
settlement. Both of these theories explicitly depend on a showing that the absent class
members’ claims were settled in Ren-Dan Farms, a showing which can only be made with
reference to the Ren-Dan Farms class notice, class members list, opt-out list, settlement
agreement, and final judgment. Because the trial court refused to consider these items we
cannot consider them. Tall, 972 S.W.2d at 898. Thus, we cannot find that the court abused
its discretion on the basis of either of these contentions. Id. Additionally, because we cannot
consider the excluded materials, we cannot say at this point that the court would be barred
from re-certifying the class on the basis of either of these arguments.
      Satisfaction of the elements of Texas Rule of Civil Procedure 42(a)
      Defendants specifically complain about the court’s decision on each of the requirements
under Rule 42(a). However, Defendants rely heavily on materials that the court refused to
consider, including the Ren-Dan Farms settlement documents and examples of the licensing
agreement and fee schedule, as the basis for their attack on the court’s implied finding that the
numerosity, commonality,


 typicality, and the second factor of the adequacy of
representation—lack of antagonism with the interest of the class—requirements were met. 
Again, because the trial court refused to consider the documents, we may not consider them. 
Id. Thus, we cannot find that the court abused its discretion on the basis of these contentions. 
Id. Additionally, because we cannot consider the excluded materials, we cannot say at this
point that the court would be barred from re-certifying the class on the basis of these
arguments.
      Does delay demonstrate inadequacy of representation?
      As an independent attack specifically directed at the court’s implied finding that Plaintiffs
are adequate representatives for the class, Defendants claim the length of time between the
filing of the usury claims and the effort to obtain class certification shows Plaintiffs will not
diligently prosecute the class claims. See Tex. R. Civ. P. 42(c)(1) (indicating that the decision
on class action status should be made “as soon as practicable after commencement of an action
brought as a class action”); Life Ins. Co. of Southwest v. Brister, 722 S.W.2d 764, 770 (Tex.
App.—Fort Worth 1986, no writ), overruled on other grounds, Southwestern Refining Co. v.
Bernal, 2000 WL 566745, *8 (Tex. 2000); McCarthy v. Kleindienst, 741 F.2d 1406, 1411-12
(D.C. Cir. 1984). Defendants argue that the “unexplained and unexcused” passage of time
establishes that Plaintiffs are inadequate class representatives. 
      As Defendants observe, there is no explanation in the record of the cause of the length of 
time between the filing of the usury claim and the hearing on Plaintiffs’ request for class action
status. Essentially, then, Defendants ask us to decide that the passage of twenty-four months
between filing the claim and the certification hearing is an unreasonable delay as a matter of
law. This we will not do. See Angeles/Quinoco Securities Corp. v. Collison, 841 S.W.2d
511, 514-15 & n.2 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding that five year
delay was not unreasonable as a matter of law and citing cases in which delays of up to six
years did not preclude certification). In the absence of a showing of the reason, or the lack
thereof, for the delay we cannot find that the court abused its discretion by failing to find the
delay established that Plaintiffs were inadequate representatives. See id.
      Satisfaction of Rule 42(b) requirements
      In their final attack on Plaintiffs’ efforts to establish the elements of Rule 42, Defendants
argue that the common issues do not predominate in the litigation so as to meet the
requirements of Rule 42(b)(4). Tex. R. Civ. P. 42(b)(4). However, Plaintiffs moved for
certification under both Rule 42(b)(1)(A) (risk of inconsistent adjudications) and 42(b)(4)
(predominance and superiority). Id. 42(b)(1)(A), 42(b)(4). As we have noted, certification
may be appropriate under more than one section of Rule 42(b). Cablevision of Dallas, 8
S.W.3d at 847. Thus, to prevail, Defendants must show that certification under both Rule
42(b)(1)(A) and 42(b)(4) was inappropriate. See Davis v. Huey, 571 S.W.2d 859, 862 (Tex.
1978); Malone v. E.I. du Pont de Nemours & Co., 8 S.W.3d 710, 716-17 (Tex. App.—Fort
Worth 1999, pet. filed). Defendants do not complain about the implied finding by the court
that the class was properly certified under Rule 42(b)(1)(A). Therefore, we cannot find that
the trial court abused its discretion in finding at least one of the requirements of Rule 42(b)
were met by Plaintiffs. See id.; Cablevision of Dallas, 8 S.W.3d at 847. 
      “Corrective Action Letters” defense
      Finally, Defendants contend that the court erred in certifying the class because Monsanto
sent “corrective action letters” to all of the class members except Plaintiffs in November 1997. 
Thus, Defendants contend, all of the absent class members claims are barred. See Tex. Fin.
Code Ann. § 305.103(a) (Vernon Supp. 2000).


 Although Defendants showed that Monsanto
had sent corrective action letters to 100 of the absent class members, Plaintiffs showed that
those letters were sent out well after the usury allegations were raised on behalf of the
proposed class in this case. Thus, if the effectiveness of the corrective action letters is
determined against Defendants, the question of usury will then apply to all potential class
members. Therefore, Defendants cannot rely upon this potential defense to show that the trial
court erred in certifying the class or to establish before us that the trial court cannot re-certify
the class on remand. 
The trial court’s exclusion of Defendants’ “material”
      In their last attack on the certification order, Defendants complain that the court refused to
consider much of the material they proffered during the course of the certification hearing. As
set out above, the court refused to consider the Ren-Dan Farms’ class notice, the list of the
Texas farmers who opted out of the class, the settlement agreement, and the final judgment
because Defendants had failed to provide Plaintiffs with copies of these documents during
discovery. Other exhibits were excluded on the basis of Plaintiffs’ hearsay objections.
      “In the area of class certification, cases can be found to support practically any point of
view.” Weatherly, 905 S.W.2d at 648. However, there are a few class-action principles
which have obtained near universal acceptance in the case law. One of those principles is that
the material on which a trial court bases its certification ruling need not be admissible
evidence. E.g., Texas Commerce Bank v. Wood, 994 S.W.2d 796, 801 (Tex. App.—Corpus
Christi 1999, pet. dism’d w.o.j.); St. Louis Southwestern Ry. Co. v. Voluntary Purchasing
Groups, Inc., 929 S.W.2d 25, 30 (Tex. App.—Texarkana 1996, no writ); Health & Tennis
Corp. of America v. Jackson, 928 S.W.2d 583, 587 (Tex. App.—San Antonio 1996, writ
dism’d w.o.j.), overruled on other grounds, Southwestern Refining Co. v. Bernal, 2000 WL
566745, *8 (Tex. 2000). Thus, “formal evidence is not required for a [certification]
determination in the sense of tendering evidence in a form meeting the requirements of the
Rules of Civil Evidence.” St. Louis Southwestern Ry. Co., 929 S.W.2d at 30. Parties can rely
on “affidavits or other forms of proof” in a class certification hearing. Id. at 31.


 
      The court refused to consider most of Defendants’ material on the basis of Plaintiffs’
claims that the documents had not been produced during discovery. Plaintiffs now justify that
exclusion by relying on the interpretation of former Texas Rule of Civil Procedure 215(5) in
Alvarado v. Farah Mfg.: “The rule is mandatory and its sole sanction—exclusion of
evidence—is automatic.” Tex. R. Civ. P. 215(5), 50 Tex. B.J. 863 (1987, amended 1998);
Alvarado v. Farah Mfg., 830 S.W.2d 911, 914 (Tex. 1992). The applicable rule now is Rule
193.6, which provides:
          193.6 Failing to Timely Respond—Effect on Trial. 
 
(a) Exclusion of Evidence and Exceptions. A party who fails to make,
amend, or supplement a discovery response in a timely manner may not
introduce in evidence the material or information that was not timely disclosed,
or offer the testimony of a witness (other than a named party) who was not
timely identified, unless the court finds that:
 
(1) there was good cause for the failure to timely make, amend,
or supplement the discovery response; or
 
(2) the failure to timely make, amend, or supplement the
discovery response will not unfairly surprise or unfairly prejudice the
other parties. 
 
(b) Burden of Establishing Exception. The burden of establishing good
cause or the lack of unfair surprise or unfair prejudice is on the party seeking to
introduce the evidence or call the witness. A finding of good cause or of the
lack of unfair surprise or unfair prejudice must be supported by the record. 
 
(c) Continuance. Even if the party seeking to introduce the evidence or
call the witness fails to carry the burden under paragraph (b), the court may
grant a continuance or temporarily postpone the trial to allow a response to be
made, amended, or supplemented, and to allow opposing parties to conduct
discovery regarding any new information presented by that response. 

Tex. R. Civ. P. 193.6.

          Application of this rule to this class certification hearing is inappropriate. The rule
specifically addresses the “Effect on Trial” of a failure to respond to discovery. Id. The
sanction is the prohibition of the introduction of the undisclosed material into evidence. Thus,
this rule is not applicable to a certification hearing. See St. Louis Southwestern Ry. Co., 929
S.W.2d at 30-31. 
          “[D]ue process under the federal and state constitutions requires that defendants to a
class action receive notice before a class-certification hearing and have an opportunity to be
heard on the question of certification.” In re M.M.O., 981 S.W.2d 72, 80 (Tex. App.—San
Antonio 1998, no pet.). Fundamental fairness dictates that a party not be arbitrarily deprived
of the right to offer its evidence. Striedel v. Striedel, 15 S.W.3d 163, 166 (Tex.
App.—Corpus Christi 2000, no pet. h.). Because there was no legal basis for the court to
refuse to consider Defendants’ evidence, Defendants were arbitrarily denied the opportunity to
present their case. This amounts to an abuse of the court’s discretion.
 

Conclusion
          An error in the exclusion of evidence will result in a reversal only if it either probably
caused the rendition of an improper judgment or probably prevented the appellant from
presenting the case to the court of appeals. Tex. R. App. P. 44.1(a). We conclude that the
error here requires reversal because it plainly prevented Defendants from presenting their case
to us. As set out above, we have been unable to consider the central arguments which
Defendants have made on the merits of the order certifying the class because the court refused
to consider the materials tendered by Defendants. Thus, we conclude that the certification
order should be reversed and this cause remanded for further proceedings consistent with this
opinion. 
TEMPORARY INJUNCTION ORDER APPEAL
          Defendants attack the temporary injunction order on four bases. First, Defendants
complain that under the full faith and credit clause of the United States Constitution, the court
“should have respected and given res judicata effect to, rather than enjoined enforcement of,
the final judgment” in Ren-Dan Farms. Next, Defendants contend there is no evidence
supporting a finding that Plaintiffs established a probable right of recovery or a probable
injury, as required for a temporary injunction. Third, Defendants argue that no “clear equity”
or “compelling circumstance” exists that would justify the issuance of an anti-suit injunction. 
Finally, Defendants charge that the form of the injunction order is improper because it does not
specify the reasons it was imposed as required by the rules.
          We construe the first and third complaints as raising questions of law which would
prevent the re-issuance of this injunction if either one is correct. Thus, we will address both of
these arguments. Bradleys’ Elec., 995 S.W.2d at 677; see also Tex. R. App. P. 47.1. The
second and fourth contentions would only have the effect of showing error in this particular
order, but would not prohibit the imposition of a second temporary injunction by the court on
remand after appropriate notice and hearing. Thus, we need not address both claims if one is
valid. Id.
Applicable standards
          As a general rule, to obtain a temporary injunction, a movant is required to show a
probable right to the relief sought on the merits of the suit and a probable injury in the interim. 
Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993). The movant is not required to show he
would prevail on final trial to show a probable right to relief, but rather is required to allege a
cause of action and offer evidence that tends to support the right to recover on the merits. 
Walling, 863 S.W.2d at 58. We review the trial court’s decision for an abuse of discretion. 
Walling, 863 S.W.2d at 58.
          Here the trial court issued two types of injunctions—(1) a prohibition on communication
with the class members and (2) an anti-suit injunction that prohibits Defendants from
proceeding in an action filed in a sister state. Courts have recognized that contacts with absent
class members by the opposing party present inherent dangers to the efficacy of the class action
procedure. Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1202 (11th Cir. 1985);
Burrell v. Crown Central Petroleum, Inc., 176 F.R.D. 239, 243 (E.D. Tex. 1997); Hampton
Hardware, Inc. v. Cotter & Company, Inc., 156 F.R.D. 630, 633-34 (N.D. Tex. 1994). 
Under the Federal Rules of Civil Procedure, trial courts are authorized to issue carefully drawn
orders prohibiting or limiting such contact. Fed. R. Civ. P. 23(d); Gulf Oil Co. v. Bernard,
452 U.S. 89, 101-02, 101 S.Ct. 2193, 2200-01, 68 L.Ed.2d 693 (1981). This specific
provision was not included in the Texas Rules of Civil Procedure when our state incorporated
the Federal class action rule into our rules. St. Louis Southwestern Ry. Co., 929 S.W.2d at
33. However, the trial court has the authority to regulate this contact if Plaintiffs made the
showing required to support a temporary injunction by virtue of its expanded authority in the
context of a class action. See Bloyed, 916 S.W.2d at 954 (acknowledging trial court’s role as
“guardian of the class interest”).
          The second provision in the trial court’s order is properly characterized as an anti-suit
injunction. Texas courts have the authority to prohibit a party from continuing litigation in a
sister state. Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649, 651 (Tex. 1996): Christensen
v. Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986). However, that power is to be
exercised “sparingly, and only in very special circumstances.” Id. An anti-suit injunction
may be issued in four instances where “a clear equity demands” the injunction: (1) to address a
threat to the court’s jurisdiction; (2) to prevent the evasion of important public policy; (3) to
prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. 
Golden Rule, 925 S.W.2d at 651.
Authority to issue anti-suit injunction
          Defendants first argue that the trial court was wrong to issue the anti-suit injunction
because the Ren-Dan Farms final judgment was entitled to be given preclusive effect under the
doctrine of res judicata.


 Because the Ren-Dan Farms final judgment was rendered by a
Louisiana state court, Louisiana law governs its res judicata effect. Villanueva v. Office of the
Atty. Gen., 935 S.W.2d 953, 956 (Tex. App.—San Antonio 1996, writ denied). Defendants
assert that under Louisiana law, a valid and final judgment is conclusive between the same
parties as to all causes of action existing at the time of final judgment arising out of the
transaction or occurrence that is the subject matter of the litigation. See La. Rev. Stat. Ann.
§ 4231 (West 1991); Spear v. Prudential Property and Casualty Ins. Co., 727 So.2d 640, 642
(La. Ct. App. 1999). 
          Although Louisiana substantive law controls the res judicata effect of the Ren-Dan
Farms judgment, Texas procedural rules control how that effect is determined. See Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998). Under Texas procedure, the party
claiming the benefit of res judicata has the burden of establishing the facts necessary to prevail
on the defense. Bell v. Moores, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.]
1992, writ denied). Thus, Defendants had the burden of showing that the Ren-Dan Farms
final judgment involved the same parties as the claims before the court. Id.; See also La.
Rev. Stat. Ann. § 4231; Spear, 727 So.2d at 642.
          The documents admitted into evidence during the injunction hearing established that the
Louisiana class action was an opt-out class. However, Defendants presented no evidence
during the injunction hearing which would tend to show that the absent class members in this
suit were members of the class action resolved in the Ren-Dan Farms litigation. Therefore,
Defendants have failed to show that the Ren-Dan Farms final judgment involved the same
parties as are before the court, and have failed to establish an abuse of discretion by the court
when it refused to give that judgment preclusive effect on the anti-suit injunction issue. 
“Clear equity” or “compelling circumstance”
          Defendants attack both the no-communication injunction and the anti-suit injunction on
the basis that Plaintiffs did not establish a “clear equity” or “compelling circumstance” to
justify the order. Although only necessary to support the anit-suit injunction, both provisions
serve to prevent the evasion of an important public interest—the integrity of the class action
procedure in the present case. Class actions play an important role in our legal system. See
Ford Motor Co. v. Sheldon, 2000 WL 566766, *6 (Tex. 2000); Bloyed, 916 S.W.2d at 952-53
(recognizing important functions of class action procedure, including that it promotes
efficiency, protects defendants from inconsistent verdicts, protects rights of absent class
members, allows recovery by small claimants, and provides a mechanism for enforcing laws
through private attorney general suits). Contact with the absent class members by the
defendant creates a real danger of destroying the efficiency of the class procedure. Kleiner,
751 F.2d at 1202; Burrell, 176 F.R.D. at 243; Hampton Hardware, 156 F.R.D. at 633-34. 
The anit-suit injunction serves the same purpose by preventing Defendants from
communicating with the absent class members via another legal proceeding. Thus, we
conclude that the court could have found the no-communication injunction and the anti-suit
injunction were necessary to prevent the evasion of an important public policy. Preventing the
evasion of the important public policies furthered by the class action procedure is a compelling
circumstance justifying the issuance of the temporary injunction by the trial court. Golden
Rule, 925 S.W.2d at 651.
 

Form of the injunction order
          Defendants have two remaining attacks on the injunction order. Under either one, the
most relief that Defendants are entitled to is a reversal of the order and a remand for further
proceedings. Therefore, we address the narrower of the two grounds: Defendants’ complaint
that the trial court’s order failed to specify the basis for finding the injunction requirements had
been met as required by Rule 683. Tex. R. Civ. P. 683.



          Rule 683 provides, in part:
Every order granting an injunction and every restraining order shall set forth the
reasons for its issuance; shall be specific in terms; shall describe in reasonable
detail and not by reference to the complaint or other document, the act or acts
sought to be restrained[.]

Id. The requirements are mandatory and must be strictly followed. InterFirst Bank San
Felipe, N.A. v. Paz Const. Co., 715 S.W.2d 640, 641 (Tex. 1986); Big D Properties, Inc. v.
Foster, 2 S.W.3d 21, 22-23 (Tex. App.—Fort Worth 1999, no pet.). If the order fails to
comply with these requirements, it is void and should be dissolved. Id.
          The injunction order issued by the court states:
On the 16th day of September, 1999, came on to be heard in the above-entitled and numbered cause . . . the Application of the Plaintiffs to have the
temporary restraining order heretofore granted by this Court on the 2nd day of
September, 1999, made, after hearing, into a temporary injunction, and
Plaintiffs and Defendants both appeared by and through their respective counsel
and it appearing to the Court that under the law and facts pled in Plaintiffs’
Application for Temporary Restraining Order and Temporary Injunction, and
based upon the evidence presented at the temporary injunction hearing held in
this cause, that the Plaintiffs have a probable right to a writ of temporary
injunction issued against the Defendants, and that the Plaintiffs will suffer
probable injury in the event that such writ of temporary injunction is not issued;
and it further appears to the Court that there is no adequate remedy at law and
that therefore, based upon the foregoing findings, it is therefore 
 
ORDERED, ADJUDGED AND DECREED by this Court that the Clerk
of this Court shall issue a writ of temporary injunction against the following
named with the following force and effect:

[setting out the terms of the injunction as described above]

          This order fails to comply with the mandatory requirement of Rule 683 that it provide a
“detailed explanation of the reason for the injunction’s issuance[.]” Adust Video v. Nueces
County, 996 S.W.2d 245, 249 (Tex. App.—Corpus Christi 1999, no pet.). Therefore, the
order is void, and the temporary injunction must be set aside. InterFirst Bank, 715 S.W.2d at
641; Big D Properties, 2 S.W.3d at 22-23.
SUMMARY
          Although we do not find that the trial court abused its discretion by certifying the class
on the basis of the materials it considered, we conclude that it abused its discretion by refusing
to consider the materials Defendants proffered during the certification hearing. Furthermore,
we conclude that the trial court’s order imposing a temporary injunction is void because the
court failed to specify its reasons for issuing the injunction. We have examined all of the
complaints Defendants raised that would have the effect of preventing re-certification of a class
or the re-imposition of the temporary injunction on remand of this proceeding, but found no
basis on the record before the trial court for finding either action is barred. Thus, we are not
in a position to render judgment.



          Therefore, the order certifying this suit as a class action is reversed. The temporary
injunction issued by the trial court on September 17, 1999, is dissolved. Each cause is
remanded to the trial court for further proceedings consistent with this opinion.
 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis
          Justice Vance, and
          Justice Gray
Reversed and remanded
Opinion delivered and filed July 26, 2000
Publish